**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

EMMETT J. HAYDEL,

                                    Plaintiff,

        v.                                                    No. 03-CV-0334
                                                                    (DRH)
AVEX INDUSTRIES, Ltd., also known as
MEDTEK Lighting Corporation,

                                    Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

GORDON, SIEGEL, MASTRO,                MELANIE J. LaFOND, ESQ.
   MULLANEY, GORDON & GALVIN, P.C.
Attorney for Plaintiff
9 Cornell Road, Airport Park
Albany, New York 12110

NAPIERSKI, VANDENBURGH &               SHAWN F. BROUSSEAU, ESQ.
   NAPIERSKI, L.L.P.
Attorney for Defendant
296 Washington Avenue Extension
Albany, New York 12203

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

        Plaintiff Emmett J. Haydel ("Haydel"), a former employee of defendant Avex Industries

("Avex"),[1] brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

1981 and 2000e, et seq. ("Title VII"), alleging that Avex unlawfully discriminated against him

because of his race and retaliated against him because he complained of the discrimination.

See Compl. (Docket No. 1).  Presently pending is Avex's motion for summary judgment

_____

        [1] In November 2002, Avex changed its name to MEDTEK Lighting Corporation.
See Def. Answer (Docket No. 2).

pursuant to Fed. R. Civ. P. 56(b).  Docket No. 39.  Haydel opposes the motion.  Docket No.

42.  For the reasons which follow, Avex's motion is granted.

## I. Background

The facts are presented in the light most favorable to Haydel as the non-moving party.

See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

Avex was formed in 1989 by Jack Springer, its President and Chief Executive Officer,

to sell tanning equipment from its principal location in Hudson Falls, New York.  In 1992,

Haydel, an African-American, was hired by Springer to work as a salesperson at Avex.

Springer Dep. (Docket No. 39, Ex. F) at 6-8, 22-23.  Springer had previously hired Haydel on

two separate occasions to work at other companies owned by Springer, the first in 1974 and

the second in the 1980s.  Id. at 19-20.  In 1999, Haydel was promoted to national sales

manager at Avex.  Id. at 33-34.  Because of this promotion, Haydel became responsible for

supervising eight to ten employees, including Debbie Meader.  Haydel Dep. (Docket No. 39,

Ex. B) at 58.  Shortly after his promotion, Haydel began experiencing difficulties with Meader

and attempted to have her dismissed from Avex.  Id. at 60-65.

On or about July 1, 2001, Meader quit her position at Avex after complaining about

persistent difficulties in working with Haydel.  Brousseau Aff. (Docket No. 39, Ex. G).  Shortly

thereafter, Meader retained an attorney and sent two letters to Springer detailing her claims

of sex discrimination and harassment against Haydel.  Id. at Exs. I & J.  However, in

February 2002, Meader's complaints against Avex and Haydel were resolved and she

returned to work, but at the Glens Falls office away from Haydel.  Id., Ex. O at 10-14, 24; Ex.

2

F at 96-102.  When Haydel was advised that Meader would be returning to Avex, he made

his opposition known to Springer and Anthony Ianniello, a corporate officer of Avex.  Id. at

Ex. M; Haydel Dep. at 88-89.

By letter dated February 17, 2002, Haydel issued "two non-negotiable proposals" that

either

> Avex dismisses D. Meader or me, [or] Avex keeps D. Meader in
> Glens Falls and pays me my $10,000 bonus for the year 2000 [,] .
> . . Avex will increase my pay $192 per week starting February
> 22nd 2002 [and] . . .  D. Meader will have to recant her charges in
> a letter acceptable to me.

Id. at Ex. C.  Springer responded to Haydel's demands by accepting the first choice, Haydel's

dismissal.  Id. at 3.  Soon after, Springer suggested that Haydel return to Avex.  Springer

Dep. at 114-15.  However, no agreement was ever reached and Haydel informed Gary

Richardson, an Avex employee, that he had found another job and would not be returning to

Avex.  Id. at 116.

On April 26, 2002, Haydel faxed a letter to Ianniello which outlined his plans to take

legal action against Avex for race discrimination.  Brousseau Aff. at Ex. D.  On or about May

3, 2002, Haydel filed a complaint of race discrimination with the New York State Division of

Human Rights ("DHR").  Brousseau Aff. at Ex. E.  In the DHR complaint, Haydel alleged

three separate incidents of race discrimination.  First, in October 2001, a fake rat with

"negroid features" was found outside Avex with the words "To Emmett on Bosses Day"

written on it.  Second, Haydel discovered a letter in another employee's file that mocked his

education.  Third, Haydel "was not given a key to the door for the Lotion Department ... yet

others, whose need was less than mine, and who were white, were given keys."  Id. at 1-2.

After investigation, the DHR dismissed Haydel's complaint.  Def. Statement of Material Facts

at ¶ 64.  The Equal Employment Opportunity Commission ("EEOC") adopted DHR's findings

and issued a Dismissal and Notice of Rights letter to Haydel that gave him until March 19,

2003 to file suit.  Id. at ¶ 65.  On November 19, 2002, Haydel filed a second DHR complaint

alleging that on two separate occasions, Avex retaliated against him for filing a complaint

with DHR.  Brousseau Aff. at Ex. S.  This complaint was also dismissed.  Def. Statement of

Material Facts at ¶ 71.  This action followed.


## II. Discussion

### A. Summary Judgment Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 250

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine

issue for trial. The non-moving party must do more than merely show that there is some

doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith

4

Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact

could find in favor of the non-moving party for a court to grant a motion for summary

judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223 (2d Cir. 1994); Graham

v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).


**B. Discrimination Claims**

To establish a prima facie claim for employment discrimination, a plaintiff must first

show "(I) membership in a protected class; (ii) qualifications for the position; (iii) an adverse

employment action; and (iv) circumstances surrounding that action giving rise to an inference

of discrimination."  Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

If the plaintiff can demonstrate a prima facie case of discrimination, "the burden shifts to the

defendant to articulate some legitimate, nondiscriminatory reason for the employee's

rejection [or termination]."  Hargett v. Nat'l Westminster Bank, 78 F.3d 836, 838 (2d Cir.

1996) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)

(internal quotations and citations omitted)).  If the defendant carries this burden, "the plaintiff

must then . . . prove by a preponderance of the evidence that the legitimate reasons offered

by the defendant were . . . a pretext for discrimination."  Id.  However, "[t]he ultimate burden

of persuading the trier of fact that the defendant intentionally discriminated against the

plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at 253; see Fox v. Amtrak,

No. 04 Civ. 1144(TJM), 2006 WL 395269, at *4 n.4 (N.D.N.Y. Feb. 16, 2006).

Here, it is undisputed that Haydel satisfies the first two elements of a prima facie claim

of discrimination.  However, Haydel's allegations are insufficient to demonstrate that he

5

suffered an adverse employment action and, therefore, he has failed to make out a prima facie case.  Upon hearing that Ms. Meader was to be rehired, Haydel issued a non-negotiable demand that Avex either dismiss Meader or Haydel, or Avex keep Meader in Glens Falls and pay Haydel a $10,000 bonus, increase his salary $192 per week and require Meader to recant her harassment charges "in a letter acceptable to [Haydel]."  Brousseau Aff. at Ex. C.  Springer chose the first option and Haydel's employment was terminated.  Even after Haydel's resignation, the parties entered into discussions about Haydel returning to work at Avex, but the discussions were unsuccessful.

However, Haydel further contends that he was subjected to a hostile work environment and racial discrimination and, therefore, was constructively discharged.  "'An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily.'"  Chan v. NYU Downtown Hosp., No. 03 Civ. 3003(RMB), 2006 WL 345853, at *10 (S.D.N.Y. Feb. 14, 2006) (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004)).  "'[W]orking conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"  Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003) (citations omitted)).  A constructive discharge claim cannot be proven by merely demonstrating that the "working conditions were difficult or unpleasant."  Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993).  Further, the Second Circuit has repeatedly held that the threshold is very low for an employer to defeat a constructive discharge claim.  See Cooper v. Wyeth Ayerst Lederle, 106 F. Supp. 2d 479, 497 (S.D.N.Y. 2000); see also Wright v. Goldman

6

Sachs & Co., 387 F. Supp. 2d 314, 325-26 (S.D.N.Y. 2005) (detailing various cases rejecting constructive discharge claims).

Here, even if Haydel were able to support all of his allegations concerning his alleged discrimination at Avex, it is clear that no reasonable person could conclude that the workplace environment was so intolerable that resignation was his only viable option.  Five isolated and unrelated incidents of alleged racial discrimination over the course of three years does not constitute intolerable working conditions.  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (stating that "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness" for a hostile work environment claim).

Even if Haydel could show that his working conditions were intolerable, he has failed to carry his burden with respect to showing Avex's intent.  Haydel offers nothing more than conclusory statements to support his claim that Avex intentionally created an intolerable workplace.  Further, as discussed supra, Haydel gave Avex an ultimatum, foreclosing any possible alternative employment arrangements.  This alone could defeat a claim of constructive discharge.  See Cooper, 106 F. Supp. 2d at 495 ("An employee who fails to explore alternative avenues offered by her employer before concluding that resignation is the only option cannot make out a claim of constructive discharge.") (citing cases).  Because Haydel has failed to demonstrate a triable issue of fact as to whether he was constructively discharged, he has not demonstrated an adverse employment action and, therefore, fails to establish a prima facie case of discrimination.

Therefore, Avex's motion on this ground is granted.

7

**C. Retaliation Claims**

Title VII retaliation claims are subject to a three-step burden-shifting analysis similar to a discrimination claim.  Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) ("a retaliation claim follows the familiar burden-shifting framework developed to evaluate allegations of disparate treatment.").  First, the plaintiff must demonstrate a prima facie case of retaliation.  This requires an employee to show "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Jute, 420 F.3d at 173 (quoting McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001)).  If a plaintiff succeeds in sustaining the initial burden, the employer must then "articulate a legitimate, non-retaliatory reason for the adverse employment action."  Jute, 420 F.3d at 173.  Once an employer satisfies their burden, this burden shifts back to the plaintiff to demonstrate that "retaliation was a substantial reason for the adverse employment action." Id.

Here, the first two elements are undisputed.  The third element, however, has not been met.  It is undisputed that in June 2002, roughly four months after Haydel's employment with Avex ended, Avex sent him a summons and complaint alleging that Haydel had made a disparaging comment about Avex to another company and demanding $250,000 in damages.  LaFond Aff. (Docket No. 43, Ex. C); Pl. Statement of Material Facts (Docket No. 41) at ¶ 90.  However, the lawsuit was never filed and no legal action was ever formally commenced against Avex.  LaFond Aff. at ¶ 10.  Haydel alleges that this threatened lawsuit constitutes an adverse action because it "could impact [his] future employment, he was

8

forced to retain an attorney, and he was emotionally distraught as a result of the frivolous lawsuit." Pl. Reply Mem. of Law (Docket No. 42) at 13 (emphasis added). To demonstrate an adverse employment action, "the asserted impact [of the retaliatory act] cannot be speculative and must at least have a tangible adverse effect on plaintiff's employment." Frontline Communications Int'l, Inc. v. Sprint Commc'ns Co., 374 F. Supp. 2d 368, 371-72 (S.D.N.Y. 2005) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001)). Here, Haydel's bare assertion that the threatened lawsuit could affect future employment does not suffice to survive a motion for summary judgment. Haydel has offered no evidence to support that he has had trouble finding employment because of the threatened lawsuit or that it may affect future attempts at gaining employment. Thus, he has failed to establish a prima facie case of retaliation.

Therefore, Avex's motion on this ground is granted.


### D. Hostile Work Environment Claims

A Title VII or § 1981 hostile work environment claim requires the plaintiff to demonstrate that the misconduct was "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" and "'that a specific basis exists for imputing the objectionable conduct to the employer.'" Alfano, 294 F.3d at 373 (citations omitted). A plaintiff must then "show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Id. There are an objective and subjective elements to this test: the harassment must be "'severe or pervasive enough to create an

9

objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."  Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see Fairbrother v. Morrison, 412 F.3d 39, 48 (2d Cir. 2005).

        As discussed supra, five incidents of alleged racial discrimination over the course of three years does not constitute misconduct so severe or pervasive as to demonstrate a hostile work environment.  See subsection II(B) supra; Alfano, 294 F.3d at 379-80 (describing numerous hostile work environment cases where the evidence supporting the claim was found insufficient as a matter of law).  However, Haydel correctly points out that a single, severe event of discrimination may suffice to state a claim.  See Alfano, 294 F.3d at 374 ("it is well settled in [the Second Circuit] that even a single act can meet the threshold [of a hostile work environment claim] if, by itself, it can and does work a transformation of the plaintiff's workplace") (citing cases).  Here, Haydel alleges that the rubber rat incident was severe enough to constitute a hostile work environment.

        In October 2001, while Haydel was away on business, a rubber rat was found outside Avex with the words "to Emmett on Bosses Day" written on it.  Haydel alleged in both the complaint and his DHR complaint that the rat had African-American features painted on it.  However, Haydel admits that he never saw the rat, nor did anyone ever explicitly tell him that there were African-American features painted on the rat.  Haydel Dep. at 116.  Haydel's only evidence is that an Avex employee "insinuated" that the rat had African-American features painted on it.  Id. at 116-17.  Further, when he complained of the incident three months later in an electronic mail message to Springer, he did not reference the rat's alleged African-

10

American features.  Brousseau Aff. at Ex. N.  Thus, no reasonable trier of fact could conclude that this one incident was so severe as to transform Haydel's workplace.

Therefore, Avex's motion on this ground is granted.


### III.  Conclusion

WHEREFORE, for the reasons set forth above, it is hereby

**ORDERED** that Avex's motion for summary judgment (Docket No. 39) be **GRANTED** as to all claims and that judgment be entered for Avex.


**IT IS SO ORDERED.**

DATED:  March 30, 2006
           Albany, New York

_David R. Homer_
United States Magistrate Judge

11